(116 App. Div. 138)

## In re BENNET.

## In re SHOBER.

(Supreme Court, Appellate Division, First Department.  October 27, 1906.)

ELECTIONS—NOMINATIONS BY ELECTORS—REQUISITES OF CERTIFICATE.

Election Law, Laws 1896, p. 925, c. 909, § 57, as amended by Laws 1901, p. 1673, c. 654, in relation to independent nominations, provides that independent nominations of candidates for public office, other than municipal offices, to be voted for in a district less than the whole state, but greater than a town or ward of a city, can only be made by 1,000 electors or more "of the district. * * * Independent nominations shall be made by a certificate subscribed by such electors"; and the certificate is required to state that the signers "of the district" for which the nomination is made will support the candidate.  *Held*, that a candidate for Congress and candidates for the Assembly from districts within the congressional district could not be lawfully included in one certificate of nomination; the unit recognized by the statute being a particular district.

Appeal from Special Term.

Appeal by William S. Bennet from an order of the Special Term denying his application to set aside the determination of the board of elections of the city of New York, overruling objections to the certificate of nomination of Francis E. Shober for member of Congress from the Seventeenth congressional district.  Reversed.

Argued before O'BRIEN, P. J., and INGRAHAM, LAUGHLIN, CLARKE, and SCOTT, JJ.

A. S. Gilbert, for appellant.

PER CURIAM.  There is presented in this case the sufficiency of certain certificates, filed with the board of elections placing in nomination Francis E. Shober for member of Congress from the Seventeenth congressional district.  It seems that the Seventeenth congressional district is composed of several entire assembly districts and portions of other assembly districts; all of these assembly districts being included in the county of New York.  On the 16th day of October, 1906, there was filed a number of sheets fastened together, which purported to place in nomination Francis E. Shober for member of Congess from the Seventeenth congressional district, James R. Brown for senator for the Nineteenth senatorial district and James J. Egam for member of assembly from the Twenty-Third assembly district, signed by more than 500 persons, but less than 1,000 persons.  The persons signing this certificate appeared to reside in the Twenty-Third assembly district, which district was included within the Seventeenth congressional district.  About the same time there was filed another set of sheets, fastened together, placing in nomination Francis E. Shober for member of Congress, Seventeenth congressional district, James R. Brown, for senator, Nineteenth senatorial district, and Dennis Murphy, Twenty-First assembly district, which district was included within the Seventeenth congressional district, and these papers were signed by upwards of 500, but less than 1,000 persons, residing in the Twenty-First assembly district.  On the 17th of October a number of sheets, fastened together, were filed, signed by between 300 and 400

102 N.Y.S.—23

persons, placing in nomination Francis E. Shober for member of Congress for the Seventeenth congressional district. On the same day several sheets, fastened together, were filed, placing in nomination Francis E. Shober for member of Congress, Seventeenth congressional district, Sherman S. Morrand, for senator, Eighteenth senatorial district, and Pierce L. Murphy for member of assembly for the Nineteenth assembly district. These were signed by upwards of 500, but less than 1,000 electors, all residents of the Nineteenth assembly district, which was included within the Seventeenth congressional district. It also appears that there was on the same day filed a number of separate sheets, fastened together, placing in nomination Francis E. Shober for member of Congress, Seventeenth congressional district, James R. Brown for senator, Nineteenth senatorial district, and J. Sidney Bernstein for member of assembly, Thirty-First assembly district, the Thirty-First assembly district being included within the Seventeenth congressional district. These papers were signed by upwards of 500 electors of the Thirty-First assembly district, but less than 1,000. The number of electors necessary for an independent nomination for member of Congress was 1,000. Objections were filed to these various papers upon the ground that no single certificate was signed by 1,000 electors, and that these various certificates from several assembly districts purporting to place in nomination a candidate for Congress, a candidate for the Senate, and a candidate for Assembly was not a compliance with the provisions of the election law, providing for independent nominations of a candidate for Congress from the Seventeenth congressional district. These objections were overruled by the board of elections, and upon an application to the Special Term of the Supreme Court such determination was affirmed.

The question here presented, therefore, is whether a certificate purporting to nominate candidates for several offices to be elected in several districts which are not coterminus is a certificate within sections 56 and 57 of the election law, chapter 909, pp. 922, 925, Laws 1896, as amended by chapter 654, pp. 1669, 1673, of the Laws of 1901. Section 56 provides that "nominations made as provided by this section shall be known as party nominations"; and the section then provides the methods by which party nominations for candidates for public office shall be made, and the certificates necessary to be filed to entitle such nominee to a place upon the official ballot. Section 57 provides for independent nominations. This section provides that:

"Independent nominations of candidates for public office other than municipal offices to be voted for in a district less than the whole state, but greater than a town or ward of a city, can only be made by one thousand electors or more of the district. * * * Independent nominations shall be made by a certificate subscribed by such electors, each of whom shall add to his signature his place of residence and make oath that he is an elector and has truly stated his residence. * * * The certificate of nomination and each separate paper thereof, if there be more than one such paper, shall contain the following declaration which shall be subscribed to by the signers thereof: We the undersigned duly qualified electors of the district for which the nomination for public office is hereby made under the provisions of section fifty-seven of the election law do hereby declare that it is our intention to support at the polls the candidacy of the person or persons herein nominated for public office."

The signatures to the certificate of nomination need not all to be appended to one paper. The board of elections appear to have passed upon these objections without any examination, which, from the number of independent nominations made, was impossible within the time fixed by the statute; and the determination of the Special Term seems to have been merely formal. Within the time that we have it is impossible to go over these petitions and ascertain whether a sufficient number of legally qualified voters have signed these various certificates. It is quite clear that the statute intended an intelligent action by the board of elections and by the court in reviewing their determination. The statute separates the nomination of candidates for the whole state, of candidates for municipal office, to be voted for by all the electors of the municipality, of candidates for a county office, for candidates for public office, other than municipal offices, to be voted for in a district less than the whole state, greater than a town, ward, or city, of an assembly or school commissioner district, of a town, or ward of a city or village. We think that it was here intended that the certificate nominating a candidate for election in any particular district should be confined to nominating candidates to be voted for in that particular district, whether that district comprises the whole state or lesser territory, and that it was not contemplated that candidates to be voted for in more than one district should be included in one certificate of nomination. The unit recognized all through this act is a particular district. The number of electors required to nominate for different districts and municipalities is different. The nomination for assembly in one assembly district is separately filed as a certificate for nomination for that particular district, and, whether the names are on one or more sheets of paper, the certificate is a separate certificate, having for its purpose the nomination of a candidate for a particular office in a particular district. The certificate for nomination of a state senator has relation to the senatorial district, and that certificate, whether consisting of one or more sheets of paper, is a single certificate for the nomination of a state senator in that particular district. The nomination of a member of Congress in a particular congressional district, whether composed of one or more sheets of paper, is a certificate of nomination for a member of Congress for a particular district. In each case there is one certificate for the nomination of a particular officer in a particular district. If there are two or more officers to be elected in that particular district, as in a municipal election, where there is a mayor and other municipal officers to be elected at the same election, the certificate is a nomination for the particular offices to be filled by the municipality which included the whole district; but a certificate of nomination for municipal officers certainly could not be combined with certificates for nomination for members of Congress, state senators, members of assembly, aldermen in the several districts, and county officers, if they should be voted for at the same election. The absolute impossibility of determining whether the aggregation of the names upon each certificate is sufficient to nominate in each particular district, as well as to nominate the officers for the whole municipality, is a fact that we can consider in determining whether it was the intent of the Legislature that independent nomina-

tions should be thus made. These considerations, which might be considerably extended, and others which, but for the lack of time, we might mention, have satisfied us that it was the intention that the certificate of nominations of independent bodies for each district should be separate and distinct.

It is impossible to treat a certificate as sufficient to nominate for one office therein named and to treat the attempt to nominate for the other offices as surplusage, because there is no test by which it can be determined for which office it can be considered a valid certificate of nomination.

Our conclusion is that such a certificate is invalid for any purpose, and for that reason the order appealed from and the determination of the board of elections is reversed.