a new trial was very clearly stated in the opinion of the court, wherein it is said:

"By the order of this court setting aside the verdict herein and ordering a new trial, the foundation of the judgment was taken away. The issues raised by the pleadings are now undisposed of, and, until such issues are tried and determined, there can be no judgment in the action." Gelder v. International Ore Treating Co., 150 App. Div. 916, 135 N. Y. Supp. 406.

The evident purpose and intent of the undertaking was that if the International Ore Treating Company was required to pay the judgment, or if its principal had exhausted all legal efforts to overthrow the judgment, that the defendant as surety would then pay the amount specified in the undertaking. If the defendant's principal was not liable upon the judgment, it necessarily follows that the defendant as surety should not be held liable upon its obligation of suretyship. The intent of the parties to the contract of suretyship was that the defendant should not be liable unless the liability of its principal was established. The action of the Appellate Division in setting aside the verdict and ordering a new trial destroyed the foundation upon which the judgment rested, and left the question of the liability of the principal of this defendant still open for determination. To construe the contract of suretyship to mean that the surety is liable without regard to the liability of its principal is to give it a meaning contrary to its obvious purpose, and to fasten upon this defendant a liability which the parties to the contract never contemplated that it should incur. Such a construction is not only highly unreasonable, but extremely unjust. When viewed in the light of these general principles, this case seems so clear that an appeal to authority is hardly necessary.

Judgment and order reversed, with $10 costs and disbursements, and motion denied, with $10 costs. All concur.

---

In re O'BRIEN et al.

(Supreme Court, Appellate Division, Third Department. October 21, 1912.)

1. ELECTIONS (§ 154*)—NOMINATIONS—REVIEW—WAIVER OF OBJECTIONS.

Appellants, seeking to review an order overruling objections to an independent certificate of nomination for Supreme Court Justice, may waive in open court any objection as to the number of signers to the petition for the nomination, so as to eliminate that question on appeal.

[Ed. Note.—For other cases, see Elections, Cent. Dig. § 136; Dec. Dig. § 154.*]

2. ELECTIONS (§ 154*)—NOMINATION BY PETITION—PRESUMPTIONS OF GOOD FAITH.

It cannot be assumed that the signers of a petition to nominate a Justice of the Supreme Court by independent certificate of nomination under the name and emblem of the National Progressive party were not bona fide members of that party, but made the nomination merely to embarrass that party, and to aid the opposition parties, though the leaders

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

and committees of the Progressive party had decided to make no nomination for the office, and the nomination made by the certificate was unsatisfactory to them.

[Ed. Note.—For other cases, see Elections, Cent. Dig. § 136; Dec. Dig. § 154.*]

3. ELECTIONS (§ 141*)—NOMINATIONS.

The voters of a party could nominate a candidate for Justice of the Supreme Court by petition on an independent certificate of nomination, though such candidate was also the candidate of another party for the same office.

[Ed. Note.—For other cases, see Elections, Cent. Dig. § 121; Dec. Dig. § 141.*]

4. ELECTIONS (§ 144*)—NOMINATIONS BY PETITION—CANDIDATES IN SEPARATE DISTRICTS.

It would be improper to include, in a petition nominating a Justice of the Supreme Court, nominees for other offices who were not to be elected for the same district, so as to thereby include in one petition candidates to be voted for in several districts not coterminus.

[Ed. Note.—For other cases, see Elections, Cent. Dig. § 126; Dec. Dig. § 144.*]

Smith, P. J., and Betts, J., dissenting.

Appeal from Special Term, Albany County.

Application by the National Progressive Party, incorporated, and others, for the review of a certificate of nomination filed with the Secretary of State purporting to nominate Gilbert D. B. Hasbrouck for Justice of the Supreme Court in the Third Judicial District, under the name and emblem of the National Progressive Party. From an order of the Supreme Court (137 N. Y. Supp. 1008) overruling objections filed by John J. Linson and others to the independent certificate of nomination, Smith O'Brien and others appeal. Affirmed.

Argued before SMITH, P. J., and HOUGHTON, BETTS, LYON, and VAN KIRK, JJ.

William M. Chadbourne, of New York City, for appellants.

A. T. Clearwater, of Kingston, and George B. Wellington, of Troy, for respondent.

PER CURIAM. We concur in the opinion of Mr. Justice Chester delivered at Special Term (137 N. Y. Supp. 1008), and desire to add only such observations as seem to us pertinent to matters suggested upon the argument. We desire to say, however, that assuming that the petition is regular in all other respects, we personally feel that it does not contain a sufficient number of signers, and that the present statute requiring signers to the number of 1,500 is not unconstitutional as to nominations in a judicial district, and that the 900 which have signed the petition in controversy do not constitute a sufficient number to effect a nomination. The appellants concede, however, that 900 signers are sufficient, and insist that the Court of Appeals so decided in People ex rel. Hotchkiss v. Smith et al., Constituting the Board of Elections of Putnam County (not yet officially reported), 99 N. E. 568.

[1] We do not understand that that decision so specifically holds

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

as to the nomination in a judicial district; but the appellants have the right, as they do, to waive in open court the sufficiency of the numbers of signers to the petition, and we therefore assume, without deciding, that as to numbers it meets the requirements of the Election Law.

[2] The situation and points presented upon the argument of the appeal are in brief as follows: The National Progressive party, an independent organization not yet having ripened into a regular political party, has nominated, for the coming election, by petition, a full state ticket and a more or less full ticket in the judicial, congressional, senatorial, and the assembly districts, and the counties throughout the state. In the Third judicial district, which embraces within its boundaries several counties, congressional, senatorial, and assembly districts, no nomination for Justice of the Supreme Court was made. At an early stage of the formation of the National Progressive party there was incorporated a voluntary association known as the National Progressive Party, Incorporated, which assumed jurisdiction to a greater or less extent over the actions of the National Progressive party itself. The president of the incorporated society was made chairman of the Progressive party of the state. Discussion was had amongst the incorporators of the National Progressive Party, Incorporated, and a Committee of the Third judicial district, which we assume was named at some proper meeting of the members of the National Progressive party, with respect to making nominations for Justice of the Supreme Court of the Third judicial district, and we assume that it was decided by such committee that no nomination should be made by the members of the Progressive party for Justice of the Supreme Court of such district. Notwithstanding such determination by the incorporators of the National Progressive Party, Incorporated, and the committee appointed for the Third judicial district, a petition was presented to the Secretary of State, signed by 900 electors of the district, placing the respondent in nomination for Justice of the Supreme Court of that district, and, as we have said, on the concession of the appellants we assume that a sufficient number of electors signed the petition, if they were otherwise qualified so to do. When the petition was presented to the Secretary of State, the situation was that the National Progressive party had made no nomination for the office of Justice of the Supreme Court for the Third judicial district. The petition was in due form of law and was the only one presented for nomination of Justice of the Supreme Court for the Third judicial district to the Secretary of State.

In Matter of Independent Nominations, 186 N. Y. 266–279, 79 N. E. 708, it was held that the certificate of an independent nomination first filed was entitled to preference over those subsequently filed. The petition being regular and being the one first filed, we think it must be assumed that the signers were members of the National Progressive party, and that it cannot be assumed that they were not in good faith members of that party but were in fact members of either the Republican or Democratic party. On the contrary, it must be assumed, in the absence of proof, and in view of the statement under

oath of the subscribers to the petition, that it is his intention to support at the polls the candidacy of the person nominated in the foregoing certificate of nomination, that the signers of the petition were members of that party and had the right, as such, to make a nomination for that party under that party's emblem, and that it cannot be assumed, in the absence of proof, that such petition was made by members of another party, or that it was made in bad faith for the purpose of foisting upon the National Progressive party a candidate distasteful to the leaders or the members of the party, or for the purpose of aiding a nominee or member of another party. The appellants insist that from the mere fact of showing that the leaders and committees of the Progressive party had decided to make no nomination, and that the nominee, this respondent, was distasteful to them, they have proved that the petition was made in bad faith and that it was not made by the Progressive party itself, but by outsiders who had no right to make an independent nomination under the emblem of the Progressive party. We do not think the proof of this fact is sufficient to overcome the presumption which we think subsists that the signers of the petition were in fact members of the National Progressive party. If the appellants had been able to show that the signers themselves were not members of that party, the situation would have been quite different. The members of any party are greater than its committees, for the committees are but mere creatures of the body of the party itself.

Believing as we do that the objection on the part of the committee was not sufficient to deprive the members of the party from making a nomination if they saw fit, and assuming, as we must, that the petition was signed by members of the Progressive party, it follows that it was sufficient to place the respondent in nomination. There was not sufficient proof in the act of the committee to show that the signers themselves were not members of the Progressive party or to cast upon the respondent the burden of showing that the signers were in fact members of the Progressive party. If we are correct in this conclusion and correct in taking the concession of the appellants that 900 signers were sufficient to place the respondent in nomination, it then follows ·that the Secretary of State properly filed the petition and that he should not be required to withdraw it from his files. In this aspect of the case the provisions of section 125 of the Election Law (Consol. Laws 1909, c. 17) have no application, for there is no dispute with respect to who shall be entitled to the emblem, for no one has attempted to use it except members of the National Progressive party. They themselves have the right to use it because it is their own emblem. The situation would be entirely different if it was proved, or if it could be assumed, that the 900 signers of the petition were outsiders and not members of such party and were attempting to use the emblem of the Progressive party and appropriate it to themselves. An independent party must act together and use the same emblem. Matter of Wise, 108 App. Div. 52, 95 N. Y. Supp. 843.

[3] The petition being in conformity to law, the signers being presumed to belong to the Progressive party had a right to nominate the respondent as a candidate of their own party, notwithstanding the fact that he may have been also the candidate of another party for the same office.

It may be further said that it was not necessary that the same electors who signed the petitions for nominations for state officers for the Progressive party, or for any of the local offices within the Third judicial district, should sign a petition for Justice of the Supreme Court for that district.

[4] It would not have been proper to include in a petition nominating a Justice of the Supreme Court other nominees which were not to be elected for such district, for it is improper to include in one petition candidates to be voted for in several districts not coterminus. Matter of Bennett, 116 App. Div. 138, 102 N. Y. Supp. 353.

It was therefore entirely regular that the petition for putting in nomination a Justice of the Supreme Court should be a separate one and not complicated with the nomination of any other officers not elected for that district.

Our conclusion is, in view of the concession of the appellants, that a sufficient number had signed the petition to make it a lawful one, and that the order should be affirmed, without costs, however.

BETTS, J., dissents. See 137 N. Y. Supp. 1106.

SMITH, P. J. (dissenting). I agree with Justice BETTS that the petition requires 1,500 signatures to conform to the statute. The concession by the attorney for the National Progressive party should not be deemed a waiver by other appellants of this fatal objection to the certificate of respondent. Aside from this, however, I vote for reversal on the ground that the certificate nominating Justice Hasbrouck is the certificate of an independent body, within the statute, which has assumed the name and emblem of another independent body against the remonstrance of every committee or authority by which that body is represented, and without attempted proof even that those signing this certificate were members of the National Progressive party. The authority to declare this certificate invalid is found in the first provision of section 125 of the Election Law. We do not need to look to the later provisions of the section therefor.

---

UNGRICH v. BALL et al.

(Supreme Court, Appellate Division, First Department. October 11, 1912.)

1. WILLS (§ 698*)—ACTION TO CONSTRUE—JURISDICTION.

An executor, to obtain an accounting in the Supreme Court, must set forth the special facts and circumstances showing that complete justice cannot be had in the Surrogate's Court: and where the Supreme Court, in an action for that purpose, construed a will, the executor may not

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes