In the Matter of the Application of GEORGE TROSK, Petitioner, for a Mandamus Order against S. HOWARD COHEN and Others, Constituting the Board of Elections of the City of New York, Respondents, and DENNIS O'LEARY COHALAN, CHARLES B. McLAUGHLIN, SAMUEL I. ROSENMAN, EDWARD R. KOCH, MOSES H. GROSSMAN and PHILIP J. McCOOK, Interpleaded Respondents, and In the Matter of the Objections of the Independent Body Named the Recovery Party to the Petition Nominating DENNIS O'LEARY COHALAN and MOSES H. GROSSMAN as Candidates for Independent Nominations for One of the Five Vacancies for the Offices of Justice of the Supreme Court for the First Judicial District of the State of New York.*

Supreme Court, New York County, October 18, 1933.

* Affd., 240 App. Div. 825; affd., 262 N. Y. 430.

*George Trosk* [*Samuel L. Seabury* and *George Trosk* of counsel], for the petitioner.

*Arthur J. W. Hilly, Corporation Counsel* [*Arthur J. W. Hilly* and *Russell Lord Tarbox* of counsel], for the Board of Elections.

*Medina & Sherpick* [*Harold Medina* of counsel], for George V. McLaughlin, Thomas I. Sheridan and Harry M. Durning, executive committee of the Recovery Party.

*Edward J. McGuire* [*Edward J. McGuire, William M. Wherry* and *Joseph C. Thompson* of counsel], for the interpleaded respondent Philip J. McCook.

*House, Grossman & Vorhaus* [*David Vorhaus, Louis J. Rosett* and *Moses H. Grossman* of counsel], for the interpleaded respondent Moses H. Grossman.

*Weil, Gotshal & Manges* [*Horace S. Manges* and *Milton P. Kupfer* of counsel], for the interpleaded respondent Samuel I. Rosenman.

*Lawrence R. Condon* [*Lawrence R. Condon* and *Osborne A. McKegney* of counsel], for the interpleaded respondent Edward R. Koch.

*Charles E. Murphy* [*Charles E. Murphy* of counsel], for the interpleaded respondent Charles B. McLaughlin.

*McManus, Ernst & Ernst* [*Terence J. McManus* of counsel], for the interpleaded respondent Dennis O'Leary Cohalan.

*Walter M. Weis* [*Walter M. Weis* of counsel], for the central committee and the five county committees of the City Fusion Party.

*John T. Dooling* [*John T. Dooling* of counsel], for the New York County Democratic Committee.

*Leonard J. Obermeir* [*Leonard J. Obermeir* of counsel], for the Republican County Committee.

*Albert S. Bard* [*Albert S. Bard* of counsel], for the Citizens Union.

*Morris L. Ernst* [*Morris L. Ernst* of counsel], for the City Clerk of New York.

COTILLO, J. This is an application for a peremptory mandamus directed to the board of elections to compel the elimination of candidates nominated by independent groups for the position of justice of the Supreme Court in the First Judicial District, under the name and emblem of the Recovery party. The application is made by a candidate for the Supreme Court whose name appears on the ticket under the names and emblems of the Republican and of the City Fusion parties. His objection is made pursuant to section 330 of the Election Law, which gives the Supreme Court power to make such order as justice may require in respect to: " 1. The designation of any candidate, in a proceeding instituted by any candidate aggrieved or by a person who shall have filed objections pursuant to section one hundred and forty-two." The application for a mandamus has been made by a candidate pursuant to this statute without the preliminary filing of objections. The law authorizes this procedure, and, therefore, the petitioner has brought his application within the jurisdiction of the court.

A cross petition, which may be consolidated with this application for a mandamus, is made by the executive committee of the Recovery party under objections filed with the board of elections to the petitions made by the bodies which have brought about the independent nominations of Dennis O'Leary Cohalan and Moses H. Grossman. It is to be observed that the committees and groups which sponsored their nominations are different. Both, however, agree in claiming the right to the name of the Recovery party and the emblem of the emblazoned key. The four other nominees are also sponsored by distinct groups of committees and nominators, each proceeding by separate petition and each claiming the name of City Recovery party and the emblem of the key.

The executive committee of the Recovery party, by resolution adopted on Friday, October 13, 1933, has approved and indorsed the nominations of four of the six independent nominees for the judicial ticket, namely, Messrs. McCook, Rosenman, McLaughlin and Koch, and disapproved the nominations of Messrs. Cohalan and Grossman; and objections were simultaneously filed with

the board of elections to the nominations of the last two mentioned candidates, which objections raise only the question of the right of the independent nominators to select the name " Recovery Party" and the emblem of the key. The ground of approval of the four is that the committee which initiated the movement after deciding to nominate by petition candidates for mayor and for other positions on the board of estimate and for district attorney reserved the question of circulating petitions for other positions under the name and emblem of Recovery party, and gave the executive committee power and authority to decide whether or not candidates other than those for the board of estimate and for district attorney should be nominees of the Recovery party. The executive committee happens to be the committee authorized by petitioners for the nomination for head of the ticket to fill vacancies. It is further alleged that on October thirteenth the executive committee indorsed the nominations by the independent groups, representing, respectively, Justices McCook, Rosenman, McLaughlin and Koch, on the ground that they were sitting justices who had served with distinction, and disapproved the nominations of the independent groups representing respectively Messrs. Cohalan and Grossman, on the ground that they had not served as justices and that their records had not yet been approved by recognized bodies of lawyers. The approval of the four and the disapproval of the other two were filed with the board of elections. The objections to the two having been filed pursuant to section 142 of the Election Law, may with propriety be considered and consolidated with the petitioner's application for a mandamus.

As pointed out in *Matter of Franklin* (212 App. Div. 664), objections of the nature mentioned must be considered by the Supreme Court in the first instance and may not be passed upon by the board of elections. The jurisdiction of the latter to pass upon the objections is limited to ministerial matters. In this respect the procedure varies from that existing prior to the passage of the amendment of 1911 as embodied in chapter 649 of the laws of that year. The board of elections has recognized the fact that the situation is such as to devolve upon this court the duty of passing upon these objections. It is neutral in the matter, and only seeks instructions on one very important point, namely, there being only five vacancies for the position of Supreme Court justice in the First Judicial District and six nominees having been presented with the emblem of the Recovery party, which ones, if any, shall be recognized by the board of elections as duly designated candidates under the name and emblem of the Recovery party. The executive committee has taken the simple stand of indorsing four

specific candidates, thus attempting to solve the problem for the board of elections. If the action of the executive committee is decisive — no questions having been raised as to the sufficiency of the number of signatures and the compliance otherwise with the technical requirements of the law — the problem is solved as to four of the five vacant places, and the only question remaining would be whether an independent body of nominators can thrust a candidate into a vacant space deliberately left by the executive committee. If this question is answered in the affirmative, it still remains to be determined whether Mr. Grossman or Mr. Cohalan is entitled to the fifth place on the Recovery party ticket.

Since the initiation of these proceedings, Mr. Cohalan has signified his intention to withdraw from his place on the Recovery ticket. While the time to decline the nomination is beyond the limit provided by law, nevertheless, the court may consider the candidate's disinclinations as a controlling element in deciding between the claims of his nominators and the rival claims of another in a situation like the present one, where there are two nominations for one place. The petitioner takes the position that none of the five nominees is entitled to a place on the Recovery ticket. The executive committee of the Recovery party, as I have observed, has indorsed four of the candidates and has specifically objected to giving the fifth place to Mr. Grossman, who, with the withdrawal of Mr. Cohalan, is the only one whose claim can be considered for that place.

The papers in their present form concededly present no issues of fact, but only questions of law: *First*, the right of the executive committee of the Recovery party to ratify the nominations of Justices McCook, McLaughlin, Rosenman and Koch; and, *second*, the right of Mr. Grossman to a place on the Recovery ticket over the objection of the executive committee. Certain decisions which seem to be decisive upon the questions have been challenged by reason of the fact that they were based upon a former statute dealing with the status and name and emblem of an independent party. It becomes necessary at the outset, therefore, to inquire into the nature of an independent party and its method of functioning as defined by the Election Law of 1909 under which many important precedents were created, and the extent to which the provisions of the present law have made these precedents obsolete. The Election Law in effect at the time of the decision in *Matter of O'Brien* (152 App. Div. 856; affd., 206 N. Y. 694), to which constant reference has been made in the briefs, contains this definition of an independent body: " § 2,

subd. 13. The term ' independent body ' means any organization or association of citizens who, by petition, nominate candidates for office to be voted for at a general, special or village election, or town meeting, and which  *  *  *  did not poll at least ten thousand votes for any candidate." This definition is almost identical with section 2, subdivision 11, of the present law, which reads: " The term ' independent body ' means any organization or group of voters which, by independent certificate, nominates a candidate or candidates for office, to be voted for at an election at which official ballots have been used, and which is not a party as herein provided."

In *Matter of O'Brien* (*supra*) it appeared there was a voluntary association known as the National Progressive Party, Incorporated, which assumed jurisdiction over the National Progressive party, an independent organization which had not yet ripened into a regular political party. The party itself had nominated its full State ticket by petition and a more or less full ticket in judicial, congressional, senatorial and assembly districts and counties. A committee representing the Third Judicial District decided that no nomination should be made by members of the Progressive party for justice of the Supreme Court of that district. Notwithstanding such determination, a petition was presented by a sufficient number of electors for nomination for justice of the Supreme Court upon the ticket of the National Progressive party. Assuming that the petition was signed by persons who were in fact members of the National Progressive party, the court held that the objection on the part of the committee to any nomination was not sufficient to deprive the members of the party from making a nomination if they saw fit, the Appellate Division basing its reasoning upon the following statement: " The members of any party are greater than its committees, for the committees are but mere creatures of the body of the party itself." The Appellate Division further held (at p. 861) that it was not necessary for the same electors who signed the nominations for State offices or for any of the local offices within the Third Judicial District, also to sign the petition for nomination for justice of the Supreme Court for that district. The reasoning of the Appellate Division was upheld by the Court of Appeals by a vote of four to three, with a strong dissenting opinion of Chief Judge CULLEN. While in my personal views I am inclined to agree with the reasoning in the dissenting opinion, I am bound by the majority rule as laid down in that case.

Assuming that the *O'Brien* case, while based upon repealed sections of the Election Law, is still the rule, how does it fit the present situation as regards Mr. Grossman, the sympathy of whose

nominators is entirely with the Recovery party principles? His nomination by an independent group belonging to that party to a vacancy which the executive committee functioning for the original sponsors of the mayoralty nominators refused to fill, must be recognized, notwithstanding the express objections of the committee. If these objections were based upon the fact that the signers were not members in good faith or in accord with the principles of the party, the situation might be different. The only objection raised by the executive committee is that it decided to limit its indorsements to the four sitting judges who had been indorsed by bar associations. The mere fact that Mr. Grossman has not yet been indorsed by a bar association is no proof that he would not be in the future. Altogether, therefore, in line with the views in the *O'Brien* case, the objections by the original executive committee are not sufficient to overcome the wishes of members of the Recovery party who insist upon filling the vacancy. The situation would of course be entirely different if the executive committee had itself sponsored a nomination and filed a petition for the fifth place and another group had filed a petition as well; or if a group belonging to the party had nominated a candidate who was afterwards ratified by the executive committee and another candidate nominated by another group, whose candidacy was not so sponsored. Assuming that there was no room for both of these candidates, that one would be given preference — other things being equal — who was indorsed by the executive committee. (*Matter of Wechsler*, 134 App. Div. 378.) (See, also, *Matter of Folks*, Id. 376; affd., 196 N. Y. 540.)

I realize the great practical difficulties which might arise by reason of the possibility that numerous independent groups might rush to take advantage of the prestige of the name and the emblem of the main group. That is why I was much impressed with the reasoning of the dissenting opinion of Chief Judge CULLEN in the *O'Brien* case. At the same time, if rival claims arise, they must be disposed of on the facts existing at the time, regardless of the unpleasantness and the difficulty of the situation.

All this is on the assumption that the *O'Brien* case is consistent with the present status of the Election Law.

As to the petitions for the other four judges, the views in *Matter of O'Brien* and *Matter of Folks* (*supra*) are, *a fortiori*, decisive. I cannot accept the view of the petitioner that the ratification by the executive committee must occur before the final date for filing independent nominations. The deadline for filing such nominations was October 10, 1933, at midnight. On that day or night there

were filed petitions of independent groups for justices of the Supreme Court. If we accepted the petitioner's view, the executive committee would be required to exercise its ratification for the four justices whom it approved on the day that it filed its own petition. How could it intelligently do so without knowing what petitions were filed, so as to decide whether such independent groups are sympathetic with the principles of the Recovery party? On the other hand, to say that the power of ratification did not exist except in the form of an inclusion of the names of the justices in the nominating petitions for the members of the board of estimate and district attorneys leads to this difficulty. There is no requirement of the law that petitions for the nominations for one office shall be the same as the petitions for another office, even if the two offices cover coterminous political units. In fact, the very Recovery party petitions for members of the board of estimate could not possibly show the same group of nominators for all. Those who signed the petition for borough president and district attorney of the Bronx as well as for the city places on the Recovery party, were different persons from those who signed for borough president and district attorney of Manhattan. It was, therefore, practically impossible for the Recovery party to have an identity of nominating electors for all offices. It is urged that the identity of purpose could have been manifested by designation of the same committee to fill vacancies for all offices on the nominating petitions. There is no such requirement of law. The Recovery party did not, as urged by the petitioner, exhaust its function by the nomination by 115,000 persons of members of the board of estimate, borough presidents and district attorneys. As a matter of fact, there was no such group manifesting a single purpose, because, while the law gives city-wide opportunity for nomination of mayor, comptroller and president of the board of aldermen, only a group of persons in a particular borough can nominate and vote for candidates in that borough. In order to count the persons belonging to the Recovery party, so as to determine the number within the strict definition of an independent party, it will be necessary to add the several groups of signers in the five boroughs, each group containing also a common set of names for the city-wide candidates. This method is urged by the petitioner in his brief when he stresses the rule that the petition, as circulated in each political subdivision, should include in addition to the candidates special to that local subdivision, all other candidates of the group which are to be voted for in that subdivision. Thereby, he argues, all persons who sign the petitions in each political subdivision make themselves comembers of the same independent body

which nominates the candidates on the ticket of the independent body generally. The trouble with this test is that it breaks down in connection with the nominations for a justice of the Second Department, if such an independent body desires to make the nomination. The petitions for candidates of justice in the Second Department must be filed in the office of the Secretary of State. They must, therefore, be on sheets separate from those of candidates nominated for local or city offices. Does the petitioner contend that such petitions as were filed in the office of the Secretary of State should also contain the names of the candidates for local positions, in addition to separate nominations for local offices to be filed in the board of elections? No such requirement exists in law. If the rule urged were adopted it would be impossible for an independent body which nominates candidates for city and county offices to nominate for justice of the Supreme Court of the Second Department except under another name and emblem, because it would be necessary to assume that the independent party had exhausted its power when it nominated candidates for local offices, and upon nominating for State offices such as justice of the Supreme Court to be filed in the office of the Secretary of State, the group so nominating would no longer be the same independent body. Such a situation cannot be covered by the literal construction of the definition of " independent body " in the Election Law, as petitioner construes it. It is necessary to go beyond the scope of such construction. Realizing that the legal definition of an independent body existing at the time of the *O'Brien* decision was virtually identical with the present definition, petitioner seeks in the language of another section of the old statute to find support for a definition of " independent body " of greater fluidity. He professes to find it in a provision of section 124 of the Election Law of 1909, which he quotes, italicizing certain phrases to bring out his argument. The quotation with the italics supplied by the petitioner is as follows: " The device or emblem so chosen, when filed as aforesaid, shall be used to designate and distinguish all the candidates of the same political party or independent body nominated by such political party or independent body, or duly authorized committee or primary thereof, *in all districts of the state*, and shall continue to be used to designate and distinguish the candidates of such political party or independent body *in all districts of the state* until changed by the state convention of the political party or independent body choosing such device or emblem." This quotation, in the view of the moving party, expands the definition of an independent body by showing that it consists not only of those who signed the petition first selecting a given

name and emblem, but also those who signed petitions for other candidates in other districts of the State, under the same name and emblem. The attempt to so expand the definition by reference to section 124 is absolutely without support, and, due to a misinterpretation of the purpose of that statute, which deals collectively with the device or emblem of both a regular party and an independent body. The purpose of the portion of the law quoted is merely to provide that when a State-wide emblem has been adopted, the nominations for local candidates of persons belonging to the same regular or independent party shall bear the same emblem. This is precisely the situation as it has to be met today. If an independent body nominates State candidates by petitions the law requires these to be filed in the office of the Secretary of State. If that same independent body desires to nominate local candidates who happen to be running in a State election year, it uses the same emblem. But how can the identity of the two sets of electors, namely, those nominating for State office and those nominating for local office, be revealed? They cannot be on the same petitions. The nominations do not have to be made by the same persons. The perplexing situation thus created today would be met in precisely the same way as under the decision in the *O'Brien* case, and in that respect there has been no change in the statute. The verbal changes caused by the repeal of section 124 of the old law were due to the fact that the entire Election Law was rewritten and the provision with regard to emblems contained in that section recast. The latter section in the earlier law covered the matter of device and emblem both for regular parties and for independent parties in the same paragraph. The revision placed the provisions with regard to emblems of regular parties in section 20 while the provision with reference to emblems of independent bodies was inserted in new section 137 by a general statement in that section to the effect that the requirements as to party emblem were to be the same as those for regular parties. A comparative reading of the Election Law of today and the one of 1909 — with regard to emblems and party names — shows no material difference.

It might be suspected from the reading of the decisions in the *O'Brien*, *Folks* and *Wechsler* cases that committees of the independent bodies, apart from those named to fill vacancies due to declinations, are established by the old law, while absent from the present statute. This, however, is not the fact. The decisions in the older cases, in giving recognition to committees for purposes of giving approval to other bodies, indicate the practical necessity of extending the scope of an independent body beyond the mere

literal definition contended by petitioner which limits it to the group which filed the petitions in behalf of a particular set of candidates. The court recognizes the fact that an independent body may have other problems besides the statutory one of designating a committee to fill vacancies in the event of declination. What is the voice of authority of an independent body? How does it express itself after the independent petitions are filed? The only revelation in the statute is the provision for naming a committee to fill vacancies. If that committee is given by statute the right to perform such a vital function as naming a substitute candidate, without consulting the will of the signers of the petitions, it follows by implication that that committee also has authority to shape to a greater or lesser extent the policies of the party. Otherwise it would be necessary to assume that convocation of the signers alone had authority to act on matters of policy. Therefore, practical necessity has extended the definition of independent body by permitting its committee recognized by the signers of the petitions, to function in relation to other groups of independent voters in harmony with its principles. The independent voters who signed petitions containing the names of the committee, by implication, conferred authority upon it. These committee members represent not only the body of voters who have signed the petition but also the voters who have not had an opportunity to do so, but who sympathize with the principles and intend to vote for the candidates nominated by the petitions of the independent electors who have named the committee. Because these prospective voters in sympathy with its principles have not had an opportunity to sign the petitions, it does not follow that they are not spiritually members of the independent body. While physically they may have signed as an independent group for persons running for office for which the original independent body has made no nominations, they nevertheless are in spirit a part of the original independent body, or at least in spiritual affiliation with it. In disputed cases it becomes a question whether the separate independent body is in actual sympathy with the principles of the original independent body. Practically no one can better answer that question than the committee to which is delegated the legal duty to fill vacancies on the original petitions filed on behalf of the head of the ticket. If that committee specifically sanctions the act of the independent body in nominating for places which it left vacant, its act is a recognition of the spiritual unity of the second independent body with the original one and must be given sanction by the court as against the claims of another group not having the affirmative sanction of a committee. For that reason the nominations of

Messrs. McCook, Koch, McLaughlin and Rosenman, regardless of the order of their filing, must be given preference over the petition of Mr. Grossman, whose nomination has not the affirmative approval of the original committee, even though more than 3,000 of the electors on Mr. Grossman's petition are also on the petition for the head of the ticket.

While the original committee has the power of approval, it cannot be said categorically that it has the absolute veto power to bar members of an independent group, whose names may not be identical with those on the original petition for the head of the ticket, to nominate for a place originally left vacant by the committee. Here it is not disputed that the signers for Mr. Grossman are in sympathy with the principles of the Recovery party. Shall we say that they must be barred because the committee has adopted as a platform that only sitting judges shall be voted for? If five sitting judges had been indorsed by the original committee, Mr. Grossman's petition would have had to be rejected under the rule in *Matter of Folks* (*supra*); but only four of the persons indorsed being sitting judges, the question is whether the admission of Mr. Grossman's petition does violence to the platform of the Recovery party and is prejudicial to the head of the ticket. I do not see how such a conclusion can be reached. It is the duty of every voter in this election to vote for five judges. If he votes for only four, he is not doing his full duty. The original committee of the Recovery party is virtually telling its adherents, " We only recommend four judges but you are free to select a fifth judge from one of the other nominees." A qualified number of members of the Recovery party do not like this procedure and they feel that the interests of the party will be promoted by selecting a definite name for the vacancy, with the recommendation under the party name and emblem to the suffrage of the body of voters at large. Why should they be prevented from doing that? Under the *O'Brien* decision this cannot be done.

There are two other considerations which support the conclusion as to the admission of the Grossman petition. One is the recent origin of the Recovery party and the wisdom of viewing its first resolution not to nominate candidates for the Supreme Court, and its second resolution to indorse as candidates only sitting judges, as not being expressions of permanent party policy. The second consideration is the fact that the nomination in question is for an office for the selection of which principles of non-partisanship are frequently applied. The selection or indorsement of a judicial candidate cannot influence or impair the policy of a body

which concerns itself principally with the task of filling executive positions with persons having a common purpose.

What shall we say of the point so greatly emphasized by the petitioner, namely, that the head of the ticket previously expressed the desire not to have any nominations for the Supreme Court, and, therefore, his determination was evidence of the principles of the Recovery party not to nominate any candidates for the judiciary? That reasoning is without weight. It is the electors who nominate the candidate or the committee designated to fill vacancies, which has sole power to act. The candidate's voice ordinarily is of no moment, save perhaps in exceptional and doubtful cases. The candidate may even be a non-adherent of the independent party, indorsed by that body although belonging to a different political faith. It is the desire and wish of the original committee which is of practical moment — not the desire of a candidate, no matter how prominent he may be, and notwithstanding the fact that he may even be the head of the ticket.

The consolidated motions are disposed of by directing the board of elections to place in the row of the Recovery party the names of Messrs. McCook, Rosenman, McLaughlin, Koch and Grossman, in the spaces under the columns of candidates for justices of the Supreme Court, in such order as may be provided by law.

Settle order forthwith.