In the Matter of GEORGE TROSK, Appellant, against S. HOWARD COHEN et al., Constituting the Board of Elections of the City of New York, et al., Respondents.

(Argued October 23, 1933; decided October 24, 1933.)

*Samuel Seabury* for appellant.

*Harold R. Medina, Percival E. Jackson* and *William Gilbert* for Recovery party, respondent.

*Horace' S. Manges* and *Milton P. Kupfer* for Samuel I. Rosenman, respondent.

*Lawrence R. Condon* and *Osborne A. McKegney* for Edward R. Koch, respondent.

*David Vorhaus* and *Joseph Fischer* for Moses H. Grossman, respondent.

*Charles E. Murphy* and *Louis Susman* for Charles B. McLaughlin, respondent.

*Arthur J. W. Hilly,* Corporation Counsel (*J. Joseph Lilly* of counsel), for Board of Elections of the city of New York, respondent.

CRANE, J. Most of the questions raised on this appeal have been before the courts in former years with the result that certain rulings regarding independent nominations have become fairly well established. When an independent body nominates by petition candidates for certain offices without making nominations for other offices to be filled at the same election those in sympathy with the general independent movement and members

of the same body have the right to file petitions of nominations for these other offices using the same name and emblem. This was *Matter of Wechsler* (134 App. Div. 378, 379). The court there said, " In a broad sense all the electors who hold the same general political views as the city, county and borough candidates have a right as to the district candidates to use the same name and emblem."

In *Matter of Folks* (134 App. Div. 376) it was held that it is always a question of good faith as to whether or not the particular persons nominated to fill up the ticket or the petitioners are in sympathy with the movement. This case was affirmed (196 N. Y. 540). These cases were decided in 1909 under the old Election Law. Following in 1912, came *Matter of O'Brien*, wherein the National Progressive party had nominated a full State ticket but had failed and, as stated in the opinion, omitted intentionally the nomination of a justice of the Supreme Court in the Third Judicial District. This nomination was made by independent electors filing a petition solely for this office, using the name and emblem of the National Progressive party. Objection was raised to this independent nomination for justice of the Supreme Court on the ground that it did not have the approval of the independent State party or organization. The Appellate Division (152 App. Div. 856, 859) said: " The petition being regular and being the one first filed we think it must be assumed that the signers were members of the National Progressive party, and that it cannot be assumed that they were not in good faith members of that party but were in fact members of either the Republican or Democratic party. * * * It cannot be assumed, in the absence of proof, that such petition was made by members of another party, or that it was made in bad faith for the purpose of foisting upon the National Progressive party a candidate distasteful to the leaders or the members of the party, or for the purpose of aiding

a nominee or member of another party." It was further held that although the committee of the party nominating for State offices had objected to the filing of this independent petition for nomination to the Supreme Court, yet the members of the party were greater than the committee and were not to be controlled by it. " Believing as we do that the objection on the part of the committee was not sufficient to deprive the members of the party from making a nomination if they saw fit, and assuming, as we must, that the petition was signed by members of the Progressive party, it follows that it was sufficient to place the respondent in nomination " (p. 860). This case was affirmed by this court (206 N. Y. 694) with a very strong dissent by Chief Judge CULLEN, concurred in by two of his associates, emphasizing most of the objections now raised by the appellants in this case. There is this difference, however. The dissent was based upon the fact that the State nominators did not intend to file petitions for a Supreme Court justice in the Third Judicial District and that such action could not be taken in opposition to the will and purpose of the governing committee of the State organization. In other words, if the State organization through its control committee had authorized or approved of the filling up of the judicial ticket there would probably have been no dissent in this court. We may say in passing that the case now before us involves no such disagreement in the party organization, the opposition to the filing of the petition coming from nominees of other parties.

These cases we have referred to with some particularity for the reason that by 1912 they had explained the Election Law regarding independent nominations and had stated these rulings for the guidance of electors and election officials. The Election Law under which they were decided (Laws of 1909, ch. 22, §§ 122, 123 and 124) is the same as the recodification of the Election Law under which we are now operating (Laws of 1922, ch.

588, § 137). The Legislature of the State must have known of these decisions and has made no change. Even in rewriting the present law in 1922, the provision for independent nominations (§ 137) was an embodiment of the old law of 1909. This silence or inaction in the face of these decisions laying down a rule of conduct for election officials is more than mere acquiescence; it is an approval of this interpretation and a declaration in effect that these rulings are a part of the Election Law. We, therefore, should be very slow in overturning them. Change, if any, must come from the Legislature.

At a meeting of the members of the Recovery party held in the Hotel Biltmore, New York city, on the sixth day of October, 1933, the members agreed to unite as a committee to advocate the election of Joseph V. McKee, as mayor, and candidates for comptroller, president of the board of aldermen, borough presidents and district attorney of New York county. The party adopted the name of the Recovery party and chose its emblem. It chose a committee of three, " an executive committee of said committee and duly authorized us as such executive committee to determine for the Recovery party whether or not candidates should be nominated by the Recovery party other than those above mentioned and whether or not the right to the use of the name or emblem of the Recovery party should be granted to or permitted by any other bodies or candidates," etc. This executive committee gave its consent and approval to the nomination by the Recovery party of Philip J. McCook, Samuel I. Rosenman, Charles B. McLaughlin and Edward R. Koch for justices of the Supreme Court in the First Judicial District. Petitions were prepared and filed in behalf of these four candidates. Like petitions were also filed for the Recovery ticket in behalf of Dennis O'Leary Cohalan and Moses H. Grossman. It is conceded or at least not denied that the petitioners for all these six nominees to fill five places (for there were only five

places to fill), were in sympathy with the Recovery party program and members of it. More than three thousand of the signers to each petition were original signers to the petition for McKee and his associates. The question, therefore, of any lack of harmony or disagreement between the petitioners and the main body is not in this case; neither is there any question of bad faith. Four of the candidates had the approval of the executive committee appointed by the Recovery party and the fifth, Moses H. Grossman, while disapproved by the executive committee, was, within the rulings in the *O'Brien* case, nominated by a sufficient number of the Recovery party members to entitle him to a place upon the ticket.

As before stated, there is no claim made that the nominators of Grossman were out of sympathy with the Recovery party or were not members of it; nor is there any claim made that his nomination is the result of any trick or unfair methods, or for the purpose of injuring in any way the purposes and aim of the Recovery party. The order of the Special Term ordering his name with the other four upon the ticket, affirmed by the Appellate Division, has not been appealed from by any representative party or body in behalf of the Recovery party and on argument it was stated that that party now asks for the affirmance of the order below, thus approving of his nomination.

Any question which may have been originally in the case by reason of the petitions for the nomination of Mr. Cohalan has been removed by the fact that he consented to the order striking his petition from the files. What might have been the order or procedure if he had not taken this action is now beside the point. (See *Matter of Independent Nominations*, 186 N. Y. 266.)

Section 137 of the Election Law providing for independent nominations also provides that the same petitions must name a committee of three to fill vacancies occurring in the nominations. There is no provision in this law

for the appointment of an executive committee or control committee to regulate the party or to make or approve of other nominations, yet a glance at the facts in the above cases which I have cited shows that every such independent party had some such committee created at its organization. This court as well as the Appellate Divisions has recognized the purposes of such a committee, at least to the extent that its action in approving of a nomination while not controlling was indicative of the harmony which existed between petitioners and the independent body. In *Matter of Wechsler (supra)* it was said that the acts and preferences of such a committee while by no means controlling are entitled to great weight and consideration in determining which set of nominators fairly represent and are in sympathy with the general ticket.

Back of all the objections raised in this case there hovers the query whether it be possible for an independent body to nominate for one or more offices with the declared policy and expressed purpose of nominating for no others, concentrating upon these alone. Can it be that an independent body has no control whatever over nominations for all the other offices which are to be filled at the coming election? The question does not arise in this case for the reasons which we have stated, so that this is not the occasion to pass upon the point. We refer to it in order that the matter may be left open for further consideration.

One word more. We have not overlooked the force of the appellant's argument that the original petition should be final as to the officers placed in nomination.

If the petition or the facts pertaining to the creation of the independent body show clearly the intent to nominate for no other offices then as we have just said, the question is not in this case as these facts do not appear here. On the other hand, if the claim is made as to any petition nominating but a few out of many

then the impossibility of adopting such a ruling seems almost self-evident. The petitioners to nominate must be electors in the particular district. If all the 115,000 petitioners nominating McKee for mayor reside in Manhattan and the Bronx they could not nominate a justice of the Supreme Court in the Second Judicial District, even if they desired to do so without filing a separate petition by electors residing in that judicial district. Separate and independent petitions must be filed if it be the desire to nominate for all the offices to be filled in a territory covering various independent political divisions. The point was considered in *Matter of O'Brien* (152 App. Div. 856, at p. 861).

For the reasons here stated the order appealed from should be affirmed, without costs.

POUND, Ch. J., LEHMAN, KELLOGG, O'BRIEN, HUBBS and CROUCH, JJ., concur.

Order affirmed.