In the Matter of the Application of ROY V. PEEL, Individually and as Chairman of the City Fusion Party, and Others, Respondents, for a Mandamus Order against S. HOWARD COHEN and Others, Constituting the Board of Elections of the City of New York, and Others, Respondents, Impleaded with ALEX KRAUT and Another, Appellants.

S. PHILIP COHEN, Intervenor, Appellant; CITY CLUB OF NEW YORK and Another, Intervenors, Respondents.*

Second Department, October 26, 1934.

*Edward Weinfeld,* for the appellant Kraut.

*Nathan E. Percy,* for the appellant Goldman.

*Joseph P. Brennan, Jr.,* for the intervenor, appellant, S. Philip Cohen.

*Walter M. Weis,* for the petitioners, respondents.

*Russell L. Tarbox, Assistant Corporation Counsel,* for the respondent board of elections.

*Albert S. Bard,* for the intervenor, respondent, William J. Schieffelin, as chairman of the Citizens Union of the City of New York.

DAVIS, J. The chairman and other officers of the City Fusion party and other interested persons seek by this proceeding to prevent

the use of the name and emblem of the party in the coming election by local district candidates, whose use thereof the executive committee does not approve. These candidates in general do not profess to have been organizers or staunch supporters of the party in any material way. They hold no official position and have maintained no visible identification with the party organization. There has been no demand by known members of the party or organization that these particular candidates should be its representatives in the election. All that they can claim is that, by the circulation of petitions on their own motion, they have induced a considerable number of persons of unknown political allegiance to put them in nomination pursuant to section 137 of the Election Law governing independent nominations. On such unsubstantial foundation of fact and reason they base their claim that the voters alone may determine that the name and emblem may be used, regardless of the determination of the chairman and executive committee. As to these officials, the proposed candidates seeking to utilize the name and emblem think it sufficient to characterize them as " self-constituted " and to argue that they are without power or authority to determine policies of the organization or exercise control of the party name and emblem; and that such authority resides only in the unknown members of the party who once voted the ticket or who now profess allegiance to its principles or to the fortunes of a particular local candidate. Such a position has been held to be basically unsound.

We have referred to the City Fusionists as a " party "— strictly speaking it is not a legally recognized party. (Election Law, § 2, subd. 5.) It is a group or movement organized for political purposes in a limited territory having the right to select a name and an emblem. (Election Law, § 137, subd. 3.)

The City Fusion party (originally organized in November, 1932, under another name) undertook to nominate certain candidates by petition in the municipal election of 1933. It had a separate. row on the voting machines. Chiefly its candidates were for offices to be filled by votes in the entire city or in the separate boroughs. As the strength of the movement developed, candidates in smaller districts sought to take advantage of the name and emblem, and except in one instance these candidates were approved by the party organization. That one withdrew his petition. The principal candidates of the organization met with a large measure of success in the election and a great number of votes were cast under its emblem. Naturally these facts have made the name and emblem of political value.

The organization of this political movement and the group that had originated it were in 1933 in a measure incomplete and incohesive. It had its officers and its committee but their duties and the control they were entitled to exercise over general political policies were not well defined. In a somewhat similar case it was held that when no nomination had been made for a particular office, persons in sympathy with the independent movement and members of the same body had the right to file petitions nominating candidates for the omitted offices using the same name and emblem of the newly-created organization, whether the candidates were formally approved by the party committee or not. (*Matter of Trosk* v. *Cohen*, 262 N. Y. 430.) In that case the objections did not come from the new party but from the nominees of other parties. It was indicated in the opinion and also in a companion case decided at the same term that it was error to hold that the action of the executive committee should not be given weight in determining which of conflicting valid petitions should be recognized. (*Matter of Marcus* v. *Cohen*, 262 N. Y. 444.)

During the year that followed, the leaders of the City Fusion party constructed a permanent organization, with subordinate committees in each Assembly district in the city. It reorganized its committees and by resolution and constitution gave power to them to utilize its emblem and name in respect to candidates which it might nominate by petition or to the persons already candidates by regular party nomination who might also be nominated by petition as City Fusion party candidates; and to withhold and forbid their use by those whose candidacy it did not approve. This action was undoubtedly taken in anticipation of the situation presented here, that candidates without seeking the approval of the committees in authority, and without any assurance that they were in sympathy with the party principles, would attempt to become candidates and appropriate the party name and emblem. The purpose, very likely, was to prevent such use by interlopers and by those whose character and conduct would bring discredit to the organization, or who were not in good faith in sympathy with its principles or not of political availability as candidates.

The City Fusion party is actively interested in the present campaign, presenting 114 candidates for different offices in the city. In some districts candidates not approved have circulated petitions in conflict with approved candidates. There are other districts where the party presents no candidates for reasons which seem to the committee to be sufficient. It is in those districts that in general candidates have come forward with petitions and make conflicting claims as to the use of the party name and emblem.

The committee disapprove of them all, saying in effect that they are not representative of the organization or " party." To these unapproved candidates, some of whom are named in this proceeding, the committees are objecting and asserting that they have no right to use the party name and emblem. These candidates have had opportunity to establish to the satisfaction of the committees that they are truly representative of the party principles and in sympathy with its purposes, and that they have sought signers to the petition amongst those of like mind — but they have neglected to take such action.

As we have stated, the organization is not a political party in the legal sense, nor can it become one under the present statute, for it limits its political activity to the city of New York and does not and will not nominate a candidate for Governor. It, therefore, has no enrolled voters and it cannot identify the individual voters who have affiliated with it or determine the constancy of such affiliation. It must, therefore, determine its policies and maintain a measure of political discipline through a definite group in the form of an executive committee. This it has done, not by acts of a few " self-constituted " leaders, but by meetings and consultations, it appears, with district leaders and organizations. It has an organization in every Assembly district. It has achieved a permanence of organization which it is entitled to continue. Greater weight should now be given to the authority and determination of this committee than a year ago, when the organization was in its formative stage.

The Court of Appeals has indicated that the acts and preferences of such a committee, while by no means controlling, are entitled to great weight and consideration in determining which set of nominators fairly represent and are in sympathy with the general ticket. (*Matter of Trosk* v. *Cohen, supra,* 438.) In view of the stability and substance of this organization, indicating permanency, it is our opinion that under the circumstances shown in this case the determination of the committee, evidenced by its rules and action, outweighs the effect of the petition. Otherwise, local groups, unaffiliated with the organization, by procuring signatures of all sorts of persons, may be able to use the name and emblem to forward their own selfish purposes and give no support or allegiance to the now definitely organized body and its leaders and to the general ticket they put in the field. If the action of the committee is unwise and the party members are offended by such action, the remedy is political rather than legal, for the party will naturally alienate its members, and the candidates disapproved may still remain on the ticket but will be required only to select

another name and emblem. We think that this case is readily distinguishable from cases like *Matter of O'Brien* (152 App. Div. 856; affd., 206 N. Y. 694).

The question of jurisdiction is not raised by the parties. We are asked to determine the right to use the name and emblem by candidates whose petitions have been filed with the board of elections, to which objections have been filed. That body is required to act on the questions in respect to conflicting claims of right. We direct them to perform a legal duty.

In reaching this conclusion and stating our reasons therefor, we determine nothing more than the particular questions in respect to the candidates brought into court in this proceeding. Other cases may present a different state of facts. Here there is practically no dispute, and the only question submitted is the one which has been considered.

The order should be modified by limiting its effect to the parties who actually appeared before the Special Term.

LAZANSKY, P. J., and HAGARTY, J., concur; CARSWELL, J., with whom KAPPER, J., concurs, dissents and votes to reverse, for brevity merely stating conclusions.

(1) The majority view herein is contrary to the unanimous decision of this court in *Matter of Straus (Strong)* (242 App. Div. 789), decided October 24, 1934, particularly in the matter of Goldman's nomination. The showing of appellant there was stronger than that of respondent here, as good faith was challenged.

(2) In the exercise of discretion, the controversial questions presented should not be ruled upon, in the uncertain, incomplete state of the record and in advance of conclusive determinative action by the board of elections affecting particular candidates with respect to their claimed rights to be deemed candidates of the Fusion party for specified offices. In substance and effect, an advisory opinion is sought to control the acts of the board of elections in advance of its action, and that opinion is to be predicated to a great extent on nebulous, varying and controverted assertions of alleged fact. Despite the varying effect of differences in the facts, an unauthorized advisory opinion is asked in the most unstable body of the law — the field of election law and mechanics of political action. Entertaining the matter in such circumstances may generate, as it has generated, inconsistent and undiscriminating decisions, as well as invasions of fundamental rights of electors or potential candidates who are not parties to the litigation and whose views are not heard on concrete controversies in advance of decisions.

(3) Passing this second ground. In the Eighteenth Assembly district, in so far as the facts herein appear, the rights of Kraut are paramount and superior to those of the other persons who have been named in other nominating petitions. The timely exercise of fundamental rights by the electors in good faith should be sustained. (*Matter of Trosk* v. *Cohen*, 262 N. Y. 430.)

(4) In the Nineteenth Congressional district the Goldman nomination should be sustained as valid action by qualified electors in the political subdivision concerned. The majority view herein is contrary to *Matter of O'Brien* (152 App. Div. 856; affd., 206 N. Y. 694) and followed in *Matter of Trosk* v. *Cohen* (*supra*). " Of course, as electors residing in the district and constituting the requisite number, they had the right to make a nomination on their own behalf * * *." (CULLEN, Ch. J., in *Matter of O'Brien*, 206 N. Y. 694, 701.) Especially did this right exist where there was no competing nominating petition presented by contrary-minded qualified electors claiming to be in the same political group or movement. (*Matter of O'Brien*, 152 App. Div. 856; affd., 206 N. Y. 694.)

(5) In the Twenty-third Senatorial district, Bronx, the Cohen nomination should likewise be sustained.

Holdings contrary to the foregoing disfranchise qualified electors, concededly acting in good faith, in a given political subdivision. It does this by giving supreme and conclusive effect to the vetoing action of a self-constituted committee in a political group or movement, which does not constitute a party within the Election Law. It tends to foster corrupt political bartering, while fundamental rights of qualified electors are being invaded. For example, in a political subdivision having 15,000 potential nominating electors, one " A " might be petitioned in nomination by a majority of all those qualified to petition him into nomination in that subdivision and yet, in face of that, even though the electors acting were as sincere adherents to the objects of the political group as the self-constituted central committee might be, that central committee, having possibly no member thereof resident in the political subdivision, might, under the ruling of the majority in this case, veto the action of that entire group.

This is utterly subversive of fundamental principles and should not be permitted in any guise or under any form of specious reasoning. The principles relating to parties, perforce the Election Law and judicial determinations thereunder, are not and properly may not be made applicable to political groups or movements in the chrysalid stage, which have not matured to the status of a true

party. To hold otherwise is legislating by the courts, a function that should be exercised by the co-ordinate legislative department of government.

The majority view herein, without legislative authority, plants and gives sole controlling vigor to the principle of autocracy in the processes of democracy. It sanctions the exercise of despotic power by a self-constituted committee in a political movement to stifle, suppress and set at naught the good faith exercise of basic rights by local electors in the same movement who have complied with the requirements of the statutes. It declares such a self-constituted committee is possessed of an arbitrary power not possessed by a corresponding committee in a true party under the Election Law; such a committee could not set at naught the exercise of nominating power by local electors acting in conformity with the statute.

There is a vast difference between giving sole controlling weight and some " weight," as the cases indicate (*Matter of Marcus* v. *Cohen*, 262 N. Y. 444, 445), to the views of such a self-constituted committee. The occasion or need to give some weight to the action of such a committee arises properly only when the good faith of the electors or signers' action is challenged. Then a committee's views may be considered in passing on the effect of two or more conflicting nominating petitions. But that is not here involved. Good faith is conceded; certainly lack of good faith in the signing electors is not shown.

There is no legal sanction for privately owned or proprietary political groups or parties with attributes of ownership vested in one small segment of the group to the exclusion of the rest of the members of the group or movement exercising in good faith their basic rights under the law. If that type of alien anomaly in a democracy is to be authorized, the law-making department is the one to sanction its creation. The proposal so to do recently failed of enactment.

Whence comes the power in the judiciary to superimpose its inadequately informed views (divided or otherwise) in reference to a problem or question inherently legislative?

Order modified by striking out that part thereof which reads as follows: " Ordered, that the said application be and the same is hereby granted; it is further Ordered, that the respondents S. Howard Cohen, William J. Heffernan, Jacob A. Livingston and Albert J. Berwin, constituting the Board of Elections of the City of New York, place on the official ballot at the general election

to be held on November 6, 1934, under the name of the City Fusion Party and its emblem, the four leaf clover, only such candidates as have been endorsed by the City Fusion Party, through its City Advisory Committee, and authorized by it to use such name and emblem and who have filed valid nominating petitions with the said Board of Elections." As so modified, the order is affirmed, without costs.