In the Matter of LEO J. ROSETT et al., Petitioners, against WILLIAM J. HEFFERNAN et al., Constituting the Board of Elections of the City of New York, et al., Respondents.

Supreme Court, Special Term, New York County, October 8, 1946.

*Copal Mintz* for petitioners.

*Louis J. Lefkowitz* for Howard Henig, respondent.

*Murray I. Gurfein* for Lester Baum and another, *amici curiæ*.

BOTEIN, J. In these four proceedings the petitioners, acting purportedly on behalf of the " Liberal Party ", jointly challenge the right of the Board of Elections to certify certain of the respondents as the duly nominated candidates of the Liberal Party. The Liberal Party is an independent body of voters (defined in Election Law, § 2) which was organized three years ago, at which time it filed a distinctive emblem in the form of the Liberty Bell. It has not polled the 50,000 votes for Governor which is a prerequisite for achieving the status of a political party, so that it might thereafter nominate by party convention or primary election. It must therefore nominate by petition as prescribed in section 137 of the Election Law.

The four respondent candidates, who will hereafter be designated as respondents, are the regularly nominated candidates of the Republican Party for the offices of State Senator and Member of the Assembly. They have concededly caused to be printed, circularized and filed petitions bearing the name and emblem of the Liberal Party, and containing the requisite number of signatures of qualified voters residing in the respective political units comprising the districts of the respondents.

Four other petitions for the offices sought by the respondents were filed by candidates who had the express approval of the Executive Committee of the Liberal Party of New York County. One of these petitions, that of Mary Hoagland, contained less than the required minimum number of signatures and was declared invalid by the Board of Elections. The other three petitions contained what purported to be sufficient signatures in compliance with section 137 of the Election Law, but for reasons with which we are not here concerned the Board of Elections declared two invalid and accepted the third. Other proceedings are pending to review these determinations, but they cannot be concluded until after registration week, one week hence.

The executive committee, following the filing of the respondents' petitions under attack herein, specifically disapproved of them, declared them not to be petitions of the Liberal Party, and resolved that in the case of the office for which insufficient signatures had been filed, it elected to have no Liberal Party candidate and that the space for such candidate be left blank. It passed a similar resolution as to the other three offices, in the

event the approved independent nominating petitions should be "declared or held insufficient or invalid."

The attack against the petitions is bottomed fundamentally upon the assertion that the respondents and the signers of their petitions are not in sympathy with the basic political principles of the Liberal Party. I find that as to the candidates, at least, there is ample evidence to sustain this contention. They admit that they will favor and support the State-wide ticket of the Republican Party as against that of the Liberal Party, which is composed of a different slate of candidates. They will subscribe to the principles, platform and legislative programs of the Liberal Party to the point only where they differ from those of the Republican Party. The respondents are all enrolled members of and workers in the Republican Party. The Liberal Party petitions were distributed from and checked in Republican Party clubhouses. A majority of the signatures were procured by enrolled Republicans. The respondents chose the members of their respective committees on vacancies. These were enrolled Republicans, Democrats, or unaffiliated politically, but none was a member of the Liberal Party. I must add, however, that there is no evidence whatever of any efforts on the part of the respondents to mislead or deceive qualified voters into signing their petitions.

In view of the frenetic preparation of proceedings under the Election Law, necessitated by limitations of time, it is virtually impossible as a practical matter to establish satisfactorily the political sympathies of any considerable number of signatories to a petition.

The respondents assert that the Liberal Party, in previous years and this year, has nominated with the approval of its executive committee State-wide and local candidates and enrolled voters of the Democratic and Republican parties. The petitioners agree that they do so when the viewpoints of the candidates conform substantially to the aims of the Liberal Party and attempt to justify this practice. As I understand it, petitioners conceive the function of their independent movement to be twofold. First, to serve as a rallying point for citizens who do not approve the choice of platforms or candidates offered by the major parties. Second, to cause the major parties to recognize the following the independent movement commands, in charting their respective courses and in nominating candidates acceptable to it; much as massive ocean liners give recognition to the insistent proddings of tiny tugboats.

I might state also that the Liberal Party has a comprehensive,

democratic internal structure, spiralling from the smallest political unit clubs to the State organization, as provided for in its rules and regulations. Thus, the approval or disapproval voiced by the executive committee is not the action of a small group which has usurped the right to speak on behalf of the members and sympathizers in this independent movement, but of duly elected and accredited representatives of the membership.

The issue may be stated as follows: Where a person is nominated for office by an otherwise valid independent nominating petition under name and emblem selected by duly qualified voters of the political unit, *and there is no other valid independent nomination for the same office,* can the executive committee of the independent body disapprove and thereby invalidate the nomination? The petitioners would answer this query in the affirmative, relying upon *Matter of Trosk* v. *Cohen* (262 N. Y. 430) and the cases and reasoning climaxed by that case. The respondents answer in the negative, relying upon *Matter of Peel* v. *Cohen* (265 N. Y. 312) decided one year after the *Trosk* case.

In the *Trosk* case (*supra*) the court, through then Associate Judge CRANE, said as follows (pp. 437–438): " There is no provision in this law for the appointment of an executive committee or control committee to regulate the party or to make or approve of other nominations, yet a glance at the facts in the above cases which I have cited shows that every such independent party had some such committee created at its organization. This court as well as the Appellate Division has recognized the purposes of such a committee, at least to the extent that its action in approving of a nomination while not controlling was indicative of the harmony which existed between petitioners and the independent body. In *Matter of Wechsler* (*supra*) it was said that the acts and preferences of such a committee while by no means controlling are entitled to great weight and consideration in determining which set of nominators fairly represent and are in sympathy with the general ticket " (citing *Matter of Wechsler,* 134 App. Div. 378, 379; *Matter of Folks,* 134 App. Div. 376, affd. *sub nom. Matter of Bates [Kavanagh],* 196 N. Y. 540, and *Matter of O'Brien,* 206 N. Y. 694).

In the *Trosk* case (*supra*) the Court of Appeals did not reach a situation where only one valid petition for an office had been filed by a candidate not in sympathy with the aims of the independent body. In that case five candidates filed petitions

with sufficient signatures for five Supreme Court vacancies. Four of the candidates had the approval of the executive committee of the independent party. The fifth was disapproved but it was not alleged that his nominators were out of sympathy with the party, nor that his nomination was the result of trickery or for the purpose of injuring the purposes and aims of the independent party. Furthermore, in court the party, somewhat belatedly, approved of his nomination.

The factual situation confronting the court, therefore, was that five petitions, signed by sympathizers, were filed for five judicial offices, all with the ultimate consent of the party. The executive committee had not, as here, resolved to hold one or more of the spaces blank and not have one or more candidates for the office.

Realizing evidently how narrowly the *Trosk* case (*supra*) had missed presenting such a state of facts, the court posed the following question (p. 438): " Back of all the objections raised in this case there hovers the query whether it be possible for an independent body to nominate for one or more offices with the declared policy and expressed purpose of nominating for no others, concentrating upon these alone. Can it be that an independent body has no control whatever over nominations for all the other offices which are to be filled at the coming election? The question does not arise in this case for the reasons which we have stated, so that this is not the occasion to pass upon the point. We refer to it in order that the matter may be left open for further consideration."

A year later the question arose and was answered in *Matter of Peel* v. *Cohen* (265 N. Y. 312, *supra*). The court stated (p. 316): " No requirement that such subscribers or the candidates thus nominated shall be in accord with the principles of the independent party is found in the statute. No such requirement exists as to party nominations of candidates."

The language of section 137 of the Election Law, read together with section 2, recites as qualifications for signatories to independent nominating petitions only that they be qualified voters of the political unit for which the nomination for office is made and that they intend to support at the ensuing election the persons nominated by them.

The opinion further states (p. 317): " * * * but it remains the law * * * that the required number of voters making a nomination for the office may adopt a name and emblem which other voters have adopted in order to nominate candidates for other offices without thereby adopting for them-

selves the general declaration of principles of such independent party or nominating a candidate in sympathy therewith. (*Matter of Trosk* v. *Cohen,* 262 N. Y. 430; *Matter of Straus,* 265 N. Y. 600.) ''

It would seem that the oft-mentioned test of the sympathy entertained for the independent movement by the candidate and his nominators applies only in cases where conflicting petitions are filed for the same office. And apparently this test or rule is one born out of expediency, because it affects an area of election contingencies for which no provision is made in the Election Law. When two or more otherwise valid petitions are filed for the same office, what other norm may the Board of Elections employ, in the absence of statutory direction, to determine, which shall be accepted and which rejected? The only other one suggested in the cases is accepting the first filed in point of time. I am sure the rule laid down by the Court of Appeals is much fairer to the independent party and in the best interests of the public.

The conclusion just reached would seem to be borne out by the language in the *Peel* case (p. 317, *supra*): '' The ruling of the executive committee is to control in the case of conflicting nominations (*Matter of Marcus* v. *Cohen,* 262 N. Y. 444), otherwise the vigilant interloper might deprive the authorized candidate of his nomination by filing his petition first. Some rule should govern in such cases and this rule seems rational, although to be strictly logical we should ignore the committee entirely.

'' *To give the independent party committees the power to limit the use of their name and emblem, legislative authority is necessary.*'' (Emphasis supplied.)

Under this reasoning, the fact that the Liberal Party implemented its disapprovals of the respondents' candidacies by distributing and filing petitions for its own candidates does not change the rule, where there remains only one valid petition for each office.

I must come to the conclusion, therefore, that where only one valid petition has been filed, the executive committee of an independent body may not cause it to be invalidated by withholding its imprimatur.

Persuasive arguments can be marshaled for or against the wisdom of granting such powers to the executive committee.

These considerations have been weighed by the Court of Appeals. It has stated in the *Peel* case (265 N. Y. 312, 318, *supra*): '' The problem is now inherently legislative.'' At another point in the same opinion it is said (p. 317): '' Argu-

ment in support of such legislation would not lack force.'' The crossing has been reached where the judiciary can do no more than signify the legislative fork in the road.

Because of the fact that proceedings attacking the validity of all petitions filed for three of these offices are presently pending, any disposition I might make herein as to those three nominations would be tentative. However, the petition filed on behalf of Mary Hoagland as candidate for Assemblyman from the 7th Assembly District concededly contained an insufficient number of signatures. The respondent Howard Henig has filed a Liberal Party nominating petition for the same office which has been accepted by the Board of Elections. This being a valid petition, and there being no other conflicting Liberal Party nominating petition for the office of Member of Assembly, 7th District, I dismiss the petition directed to the Henig nominating petition. I indicate thereby that I will dismiss similarly any or all of the three remaining petitions herein in the event the nominating petitions filed by the candidates sponsored by the executive committee are held invalid; and that I will grant the applications should any or all of those nominating petitions be held valid. When the pending proceedings shall have been concluded, settle orders in accordance with the foregoing. Since the instant Henig decision is determinative of the three other proceedings, ample opportunity is thereby afforded the petitioners to take any further action they may deem advisable as to all four proceedings.